IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BRAD BAKHSH and NATALIE BAKHSH AS PERSONAL REPRESENTATIVE OF ESTATE OF GARRET TAZWELL BAKHSH,<br>    Plaintiffs,<br><br>vs.<br><br>MOUNT VERNON FIRE INSURANCE COMPANY and ACROSS TOWN, INC. d/b/a MAC'S LOUNGE,<br><br>    Defendants. | Civil Action No.: 4:22-CV-02584-JD<br><br><br>**ORDER** |

  This case arises out of an insurance coverage dispute regarding a Commercial General Liability ("CGL") insurance policy ("Policy") issued by Defendant Mount Vernon Fire Insurance Company ("Defendant" or "Mount Vernon") to Defendant Across Town, Inc. d/b/a Mac's Lounge ("Across Town"). The coverage dispute involves an underlying state court judgment obtained by Plaintiffs Brad Bakhsh and Natalie Bakhsh, as personal representatives of the Estate of Garret Tazwell Baksh ("Plaintiffs") against Across Town in connection with the fatal shooting of Garrett Bakhsh while at Mac's Lounge. Defendant filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), seeking dismissal of this action because the Policy includes an Absolute Firearms Exclusion and an Assault or Battery Exclusion that Defendant argues precludes coverage for the shooting incident. (DE 8.)

  The parties have briefed the motion; therefore, the motion is ripe for review and decision. After reviewing the motion and memoranda submitted, the Court grants Mount Vernon's Motion for Judgement on the Pleadings (DE 8) for the reasons provided herein.

**BACKGROUND**

This case arises out of an underlying lawsuit in the Court of Common Pleas for Darlington County against Across Town ("Underlying Action") for the wrongful death of Garret Tazwell Bakhsh.  As alleged, on January 26, 2020, Garrett Tazwell Bakhsh ("Mr. Bakhsh") was a patron of Mac's Lounge, an establishment owned/operated by Across Town.  (DE 1-1, ¶¶ 6, 3.)  While Mr. Bakhsh was on the premises of Mac's Lounge, an argument arose between two other patrons, during which one of them brandished a firearm and began shooting.  One of the gunshots struck Mr. Bakhsh in the head resulting in his death.

At that time, Across Town was insured under the Policy bearing Policy No. CP 2615313B and effective October 12, 2019, to October 12, 2020.  (DE 4, ¶ 8; 6-1, p. 2.)  Plaintiffs further allege that Across Town is liable for its negligent and reckless acts and omissions in failing to prevent or otherwise guard against the shooting.  Across Town defaulted in the underlying lawsuit, and a judgment in Plaintiffs' favor was entered for actual damages in the amount of $20 million and punitive damages in the amount of $10 million.  (DE 1-1, ¶ 17; 1-2, pp. 11-16.)  The present action followed on June 27, 2022, in which Plaintiffs seek recovery of the judgment in the Underlying Action from Mount Vernon.  (DE 1-1.)  Under the Policy, Mount Vernon agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (DE 6-1, p. 41.)  However, "[t]he amount [Mount Vernon] will pay for damages is limited as described in Section III – Limits Of Insurance."  (Id.)  Section III – Limits Of Insurance states:

> 1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>
>    a. Insureds;
>    b. Claims made or 'suits' brought; or
>    c. Persons or organizations making claims or bringing 'suits'.

    2. The General Aggregate Limit is the most we will pay for the sum of:

        a. Medical expenses under Coverage C;
        b. Damages under Coverage A, except damages because of 'bodily injury' or 'property damage' included in the 'products-completed operations hazard'; and
        c. Damages under Coverage B.

    . . .

    5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

        a. Damages under Coverage A; and
        b. Medical expenses under Coverage C because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence'.
        . . .

(Id. at 50.) The Limits of Insurance stated in the Declaration is $1 million for each Occurrence, but pursuant to the express language of the Policy, Mount Vernon agrees to pay only for damages to which the insurance applies. (Id. at 5.) Importantly, the Policy contains an absolute Firearms exclusion, which provides:

### ABSOLUTE FIREARMS EXCLUSION

    The policy does not insure against loss or expense, including cost of defense, for any "occurrence", claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" or medical payments arising or resulting from directly, or indirectly, the use of firearms of any kind.

    This exclusion applies to any "occurrence", claim or "suit" regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss.

    All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

(Id. at 66.) The Policy also contains an Assault or Battery exclusion, which provides:

### ASSAULT or BATTERY EXCLUSION

    This insurance does not apply to:

3

> Any claim, demand or 'suit' based upon any actual or alleged 'assault' or 'battery', or out of any act or omission in connection with the prevention or suppression of any 'assault' or 'battery', including the use of reasonable force to protect persons or property, whether caused by or at the instigation or direction of an insured, its 'employees', agents, officers or directors, patrons or any other person. Further, no coverage is provided for any claim, demand or 'suit' in which the underlying operative facts constitute 'assault' or 'battery'.
>
> This exclusion applies to all 'bodily injury', 'property damage' or 'personal and advertising injury' sustained by any person, including emotional distress and mental anguish, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving 'assault' or 'battery' whether alleged, threatened or actual including but not limited to 'assault' or 'battery' arising out of or caused in whole or in part by negligence or other wrongdoing with respect to:
>
> a. hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible; or
> b. investigation or reporting any 'assault' or 'battery' to the proper authorities; or
> c. the failure to so report or the failure to protect any person while that person was in the care, custody or control of the insured, its 'employees', agents, officers or directors; or
> d. any acts or omissions of any insured, its 'employees', agents, officers, directors, patrons or other persons resulting from any 'assault' or 'battery' and occurring subsequent in time thereto which caused or are alleged to have caused, directly or indirectly, any 'bodily injury', 'property damage', or 'personal and advertising injury' to any person.

This exclusion supersedes any provision in the attached policy that provides coverage for 'bodily injury' arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the use of reasonable force to protect person(s) or property.

'Assault' means the threat of, or use of force on another that causes that person to have apprehension of imminent harmful or offensive conduct, whether or not the threat or use of force is alleged to be negligent, intentional or criminal in nature. 'Battery' means negligent or intentional physical contact with another without consent that results in physical or emotional injury.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

(Id. at 66.)

"Suit" is defined as "a civil proceeding in which damages because of 'bodily injury' . . . are alleged." (Id. at 55.) The Policy defines "bodily injury" to mean: "a. bodily injury; b. sickness; c. disease; or d. mental anguish or emotional distress arising out of a., b., or c., above, sustained by a person, including death resulting from any of these at any time." (Id. at 15.) The Mount Vernon Policy also contains the following Punitive Damages Exclusion:

> Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages.
>
> If a 'suit' is brought against any insured, and falls within the coverage provided by the policy, seeking both compensatory damages (damages for economic loss and pain and suffering) and punitive or exemplary damages (damages as a means of punishment), no coverage shall be provided by this policy for any costs, interest, defense costs, attorney or legal fees of any type or damages attributable to punitive or exemplary damages.
>
> All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

(Id. at 28.)

## LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . . " Fed. R. Civ. P. 12(c). "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014). Thus, a Rule 12(c) motion should be granted when, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Id. For purposes of a Rule 12(c) motion, courts are limited in their reviews to the pleadings and "any documents and exhibits attached to and incorporated into the pleadings." Thomas Daniels Agency, Inc. v. Nationwide Ins.

5

Co. of Am., 122 F. Supp. 3d 448, 450-51 (4th Cir. 2015). A Rule 12(c) motion is properly filed and granted during the pendency of discovery when a change in controlling precedent makes the relief sought in the suit unobtainable or when a plaintiff is incapable of prevailing on the constitutional claims she has asserted. See Drager, 741 F.3d at 474–76; Pulte Home Corp. v. Montgomery Cnty., Md., 909 F.3d 685, 691, 695–96 (4th Cir. 2018).

## DISCUSSION

Mount Vernon contends that there is no coverage for the shooting death of Mr. Bakhsh based upon the express allegations of the Complaint in this matter, the terms of the underlying judgment attached to the Complaint, and the provisions of the Policy attached to the Answer of Mount Vernon, and therefore, this action should be dismissed.[1] (DE 8.) This Court agrees. As a threshold matter, under South Carolina law, "[a]n insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008). As such, insurance policies are subject to the general rules of contract construction and the court must give the policy language its plain, ordinary, and popular meaning. See Bell v. Progressive Direct Ins. Co., 407 S.C. 565, 579, 757 S.E.2d 399, 406 (2014). "An insurance policy is to be liberally construed in favor of the insured[,]" Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 378 S.C. 623, 628–29, 663 S.E.2d 492, 495 (2008), and "policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability," Owners Ins. Co. v. Clayton, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005). Nevertheless, the obligation of the insurer under an insurance policy "is defined by the terms of

---

[1] Furthermore, even if coverage was not excluded, Mount Vernon contends that Plaintiffs have not alleged or demonstrated that Across Town assigned any of its rights under the Policy to Plaintiffs, and thus, there is no basis for recovery in excess of the Policy limit nor can they recover any amount awarded for punitive damages. Given the Court's ruling herein, the Court declines to address this argument.

the policy itself and cannot be enlarged by judicial construction." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 344 S.C. 525, 530, 544 S.E.2d 848, 850 (Ct. App. 2001). Indeed, it is well settled that "courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." Diamond State Ins. Co. v. Homestead Indus., Ins., 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995) (citing Torrington Co. v. Aetna Cas. & Sur. Co., 264 S.C. 636, 643, 216 S.E.2d 547, 550 (1975)). Further, "[w]here the terms of a contract are clear and unambiguous as a matter of law, its construction is for the court." Black v. Freeman, 274 S.C. 272, 273, 262 S.E.2d 879, 880 (1980).

Here, the Absolute Firearms Exclusion clearly and unambiguously excludes any coverage for the shooting of Mr. Bakhsh on January 26, 2020, because all suits or claims arising out of the use of a firearm are excluded. (DE 6-1, p. 65.) As applied to this case, Plaintiffs affirmatively allege that the underlying state court action and the purported wrongful death were the result of Mr. Bakhsh being shot and killed. (DE 1-1. ¶¶ 6-7.) Further, Plaintiffs attached to their Complaint the Underlying Lawsuit's judgment against Across Town and rely upon it as the basis for their alleged right to recover from Mount Vernon. The judgment expressly states that Plaintiffs' claims against Across Town arise out of Mr. Bakhsh's death via a gunshot wound to the head after two patrons began to argue, and one drew and fired a firearm. (DE 1-2, pp. 11-16.) Accordingly, the underlying lawsuit is "a civil proceeding in which damages because of 'bodily injury' . . . are alleged, arising out the use of a firearm" such that coverage is expressly excluded by the Policy. (DE 6-1, p. 65.)

Plaintiffs labor to draw a distinction between the "Commercial General Liability Coverage Form," and the Commercial General Liability Policy. In this regard, Plaintiffs argue that the exclusion purportedly applies only to the umbrella and excess liability coverages and not the

Policy. In support of this argument, Plaintiffs state, "[t]his particular exclusion shows, in capital bold type, that the exclusion applies to 'Commercial Umbrella **Policy**' and 'Excess Liability **Policy**'. (emphasis added)," and the "'Commercial General Liability Coverage Form" is not shown in bold type, nor does it indicate that the exclusion applies to the Commercial General Liability Policy." (DE 12, p. 6.)  However, the Court is not persuaded by this strained reading of the Policy. The title of the operative insurance contract – and the contract to which the exclusion applies – is "Commercial General Liability Coverage Form." (See DE 6-1, p. 41.)  The phrase "Commercial General Liability Policy" does not appear in the Policy and appears to be Plaintiffs' own creation.[2] Based on the Policy's plain, ordinary, and popular meaning, the "Commercial General Liability Coverage Form" is the operative Policy language, and it is expressly modified by the Absolute Firearms Exclusion which bars the subject insurance coverage in this matter.

## CONCLUSION

For the reasons set forth above, it is ORDERED, ADJUDGED and DECREED that the Defendant Mount Vernon Fire Insurance Company's (DE 8) Motion for Judgment on the Pleadings is granted, and this action is dismissed.

**IT IS SO ORDERED.**

June 20, 2023
Florence, South Carolina

Joseph Dawson, III
United States District Judge

---

[2] Although Plaintiffs attempt to make a similarly strained argument regarding the firearms exclusion only applying to incidents involving more than one firearm, the Court is equally unpersuaded by the Florida district court case cited in its response in opposition based on the facts of this case.

The Court is equally unpersuaded by Plaintiffs' arguments as they relate to the Assault and Battery Exclusion, its waiver of coverage defenses by virtue of its denial of defense to the Insured, and a violation of public policy because Plaintiffs offer no controlling authority to support these arguments.